No. 24,913.

FARMERS STATE BANK, OF CUBA, *Appellant*, v. GEORGE BLAZEK, *Appellee*.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Nonnegotiable*. A note bearing the words "Subject to purchase of Cuba Elevator" is not negotiable, because it does not contain an unconditional promise to pay.

2. SAME—*Not Rendered Negotiable by Certain Indorsements Thereon*. Where one signs and indorses a note payable to his own order, containing a written clause making the promise to pay conditional, the note is not rendered negotiable, nor is the conditional clause nullified by these words being printed over the indorsement: "There are no conditions offsetting this note, and any bank, banker, corporation or individual has my permission to purchase the same."

3. SAME—*Payment on Condition That a Certain Elevator was Purchased— Written Contract*. Where a note contains the clause "Subject to purchase of Cuba Elevator," it may be shown by parol evidence that a particular elevator was referred to and that the payment of the note was conditional on the purchase thereof by the person to whom the note was delivered. And it is held that the transaction embodied in a written contract between such person and the owner of the elevator did not amount to a purchase within the meaning of the word as used in the note.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed January 12, 1924. Affirmed.

*W. T. Roche*, of Clay Center, and *N. J. Ward*, of Belleville, for the appellant.

*W. D. Vance*, and *R. E. McTaggart*, both of Belleville, for the appellee.

The opinion of the court was delivered by

MASON, J.: On February 6, 1921, George Blazek signed, indorsed in blank and delivered to the Associated Mill & Elevator Company a note made payable to his own order. The company sold the note to the Farmers State Bank of Cuba, Kansas, which brought this action upon it against Blazek, who defended on the ground that the conditions on which his liability rested had not been met. On March 1, 1923, judgment was rendered upon a directed verdict in favor of the defendant, and the plaintiff appeals.

1. The note, for which a printed form was used, bore upon its face the written words "Subject to purchase Cuba Elevator." Therefore the promise to pay was not unconditional and the note was

not negotiable (Neg. Inst. Law, § 8; R. S. 52-201), and was subject to the same defenses as though still in the hands of the first taker. There was testimony tending to connect the written provision with an agreement that an effective delivery was not to be made until the condition indicated had been met. But whether that were the case or not the insertion clearly showed that the defendant's liability was contingent upon the performance of the condition.

2. Over Blazek's signature on the back of the note were the printed words: "There are no conditions offsetting this note, and any bank, banker, corporation or individual has my permission to purchase the same." This had no effect upon the rights of the parties hereto. The permission given to purchase the note was unnecessary and futile. The statement that there were no conditions offsetting the note, whatever other effect it may have had, did not overcome the force of the condition expressed on the face of the instrument. The words "Subject to purchase Cuba Elevator" were a part of the note and the statement on the back was that there were no conditions offsetting the contract on the face, which included that provision. The note was not complete until it had been indorsed (Neg. Inst. Law, § 191) and everything preceding the defendant's final signature was a part of one contract. So far as there was any conflict between the provisions on the face and those on the back of the paper the clause on the face prevailed because of its being written, while the statement on the back was printed. (§ 24.)

3. The note was given for shares in the Mill & Elevator company, Blazek signing an acknowledgment of their purchase, and an agent of the company signing a receipt. The defendant pleaded and produced evidence showing that at the time the note was executed the company's agent agreed that it should be placed in the bank (the plaintiff) and should not be effective unless by June 12, 1921, the company should purchase and have in operation the elevator at Cuba owned by O. Vanier; and that a like agreement was made with other purchasers of stock who gave similar notes. The defendant's position is that the words "Subject to purchase Cuba Elevator" constitute a mere memorandum and that oral evidence is admissible to show the full agreement of the parties. The plaintiff contends that their rights must be determined upon the face of the instruments already referred to and a document executed

by the Mill & Elevator company and Vanier relating to the pur-
chase of the elevator, oral evidence being inadmissible except to·
identify the elevator referred to in the quoted phrase. The view
we take of the effect of the document last mentioned makes it un-
necessary to determine to what extent oral testimony may be re-
sorted to in support of the defendant's claims. The language "Sub-
ject to purchase Cuba Elevator" admits and requires some inter-
pretation in the light of extraneous evidence beyond the mere
identification of the elevator intended. For instance it would be
proper and doubtless essential to show who was to buy the elevator.
Assuming that the defendant was not entitled to show that the
elevator was to be purchased and put in operation by the Mill &
Elevator company within a fixed time, his liability was at all events
contingent upon the company's having actually purchased the
elevator. The word purchase may have a variety of meanings
according to the connection in which it is used. In the situation
presented we think it must be held, particularly if fuller interpreta-
tion by oral evidence is to be denied, to include at least an actual
transfer of title.

The plaintiff's cashier as a witness in its behalf testified that on
April 11, 1921, it bought from the Mill & Elevator company the
note sued on and others substantially like it for the aggregate face
amount of $6,100, paying $5,940 in certificates of deposit, $3,300
of which were made payable to Vanier; that earlier in the same day
the deal for the purchase of the elevator (a structure maintained
on a right of way under a license or lease from the railroad com-
pany) was completed and these certificates for $3,300 were used
in part payment therefor. The contract between the Mill & Elevator
company and Vanier, relied upon by the plaintiff as a purchase,
recited the payment of $3,300 upon the purchase price of $7,000,
and the giving of the company's notes for $3,500 due in 3 and 6
months. It provided that if these notes were not paid within 30
days after written notice of default the contract should be void
and Vanier should retain the payments made; that he reserved title
in himself as security until full payment should be made; and that
when payment was completed a bill of sale should be given. Pro-
vision was made for immediate delivery of possession, but Vanier
reserved a "license and privilege" of occupancy until June 12, 1921.
The language of the contract was—"it is hereby agreed between
the parties hereto that the Associated Mill & Elevator Company

shall purchase and O. Vanier shall sell and deliver all of the above described property to the Associated Mill & Elevator Company, upon the following terms and conditions."

We do not think the execution of this document should be regarded as a purchase of the property for the purpose of determining the liability of the defendant on the note in suit. If the amount of money paid had been merely nominal this would seem quite obvious. The cash payment was so large as to increase the probability of the remainder of the agreed price being paid, but it was made from the proceeds of notes that were not to be effective until the purchase was complete. The Mill & Elevator company paid in cash a little over half of what it received for the notes it had obtained from the defendant and those in like situation. It did not obtain a complete title to the elevator, and its obtaining full title was contingent upon its meeting its own obligations, which it might not do. The cashier also testified that on the night the contract was executed Vanier's manager handed the keys to the agent of the Mill & Elevator company, who gave them back, saying "now we have gotten physical possession of this elevator." This did not alter the character of the transaction with respect to its being a purchase. It did not indicate any real change of possession, but in any event possession by the company would not have resulted in a complete passing of the title. As between Vanier and the Mill & Elevator company the deal might be deemed a purchase, for the company could obtain title merely by performing its agreement. But the situation of the defendant and the others who had given similar notes was in no way bettered by this consideration. Their liability attached only if the Mill & Elevator company became the owner of the elevator, and the fact that it could do so by performing its obligation did not meet that condition.

The plaintiff urges that as indorser of the note the defendant warranted its validity under section 73 of the negotiable instruments act. The warranty referred to in that section runs only to the immediate transferee—in this case the Mill & Elevator company. The warranty of the succeeding section inures only to the benefit of a holder in due course, a term applicable only in relation to a negotiable instrument, which the note sued on is not. (See *Consolidated Motors Company v. Urschel, ante*, p. 147.)

The plaintiff has filed in this court an affidavit that on April 14, 1923, the receiver of the Mill & Elevator company paid to Vanier

the $3,500 balance of the purchase price and obtained from him a bill of sale for the elevator. The fact cannot be brought upon the record in this way, even if it would affect the judgment already rendered.

The judgment is affirmed.